UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

JORGE ROMAN CARDONA, et al,
  Plaintiffs,

v.

UNITED PARCEL SERVICE,
  Defendant,

Civil No. 98-1992 (HL)

**OPINION AND ORDER**

Before the Court is a motion for summary judgment by Defendant United Parcel Service ("UPS"). Plaintiffs are Jorge Román Cardona ("Román"), his wife Wanda Ramos Collazo, and their conjugal partnership.[1] Román is a former UPS employee. He claims that UPS terminated him because he has a disability and because he requested a reasonable accommodation. He brings a claim for monetary relief pursuant to the Americans with Disabilities Act ("ADA").[2] He also brings claims under Puerto Rico's Law 44, the local statute prohibiting disability-based discrimination.[3]

The Court reviews the record in the light most favorable to Román and draws all reasonable inferences in his favor. *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993). Román has been an insulin-dependent diabetic since he was six years

---

[1] In the interests of conciseness and because the claims of Wanda Ramos Collazo and the conjugal partnership are derivative of Román's claim, the Court will refer only to Román when discussing Plaintiffs.

[2] 42 U.S.C.A. §§ 12101 - 12213 (West 1995 & Supp. 1999).

[3] P.R. Laws Ann. tit. 1, §§ 501 - 511 (Supp. 1997).




Civil No. 98-1992 (HL)                                2

old. This condition requires him to receive an injection of insulin every day. He started working for UPS in 1989 as a car washer. At the time, UPS was not aware of Román's diabetes. In 1991, Román became a driver for UPS.[4] The United States Department of Transportation has regulations regarding the qualifications of drivers of commercial vehicles. These regulations prohibit insulin-dependent diabetics from driving commercial vehicles. *See* 49 C.F.R. § 391.41(b)(3) (1998). The Puerto Rico Public Service Commission has regulations which impose the same limitation.[5]

Commercial drivers are required to take a medical examination to determine their physical fitness. *See* 49 C.F.R. § 391.43. In January 1991, Román took such an examination. As part of the examination, he filled out a questionnaire detailing his medical history. In the questionnaire he indicated that he did not have diabetes. The top of the questionnaire contained the following language: "Failure to disclose any past or present significant medical history may result in termination of your employment." A medical history form also warned that "any deception or knowingly false statement . . . may result in immediate dismissal."[6] The examining physician indicated that he suspected that Román suffered from diabetes mellitus and a renal disease. The report also stated that Román had moderate to severe hypertension. The physician deferred the decision on

---

[4] Docket no. 17, at 44.

[5] Docket no. 5, exhibit 7.

[6] Docket no. 5, exhibit 2; docket no. 17, at 45.

Civil No. 98-1992 (HL) 3

whether Román was medically qualified for the position.[7] Subsequently, Román obtained a medical certification from Dr. Jorge Lastra Inserni stating that he was treating Román for hypertension and that his condition had been stabilized with medication.[8]

Román was again examined in 1995. He again filled out a medical history form which warned that any false statement could be cause for discipline, including termination. In the form, Román again indicated that he was not an insulin-dependent diabetic. His examining physician, however, reached a different conclusion. The physician reported that Román was indeed insulin-dependent and suffered from diabetes mellitus. In the part of the report requesting a risk assessment, the physician checked the category that read as follows:

> High Risk/Restriction: Examinee is not medically qualified to perform essential functions of the position. Accommodations will not reduce medical risk or restriction.[9]

Notwithstanding these findings by the examining physician, Román continued to work at UPS as a driver. UPS' human resource manager, security supervisor and operations manager were in charge of reviewing these medical results.[10]

Román's next examination was on May 14, 1997. The medical history form warned

---

[7] Docket no. 5, exhibit 2.

[8] Docket no. 11, exhibit V.

[9] Docket no. 11, exhibit VI.

[10] Docket no. 11, exhibit II.

AO 72A
(Rev.8/82)

Civil No. 98-1992 (HL)                                4

that any false statements could result in termination, but Román again stated that he did not have diabetes.[11] This time the examining physician explicitly stated in his report that Román did not qualify to be a driver under the Department of Transportation regulations. He further stated that Román's high blood pressure was uncontrolled and he would need treatment for him to qualify under the regulations.[12] He was further evaluated that same month. These additional examinations found that he was an insulin-dependent diabetic and was therefore not qualified to be a commercial driver.[13]

UPS company policy requires honesty from its employees. The policy states "Dishonesty will result in immediate dismissal and possible criminal prosecution to the full extent of the law." Román was provided with a copy of this policy in August 1989.[14] The collective bargaining agreement between UPS and its union of employees also contains a provision warning that dishonesty by a worker can result in immediate dismissal.[15]

Once it became apparent that Cardona's condition prevented him from being licensed to be a driver, he worked for two weeks in the position of package scanner. He asked UPS to accommodate him with a permanent assignment to another position within

---

[11] Docket no. 5, exhibit 4.

[12] Docket no. 11, exhibit VII.

[13] Docket no. 11, exhibits VIII, IX, & X.

[14] Docket no. 5, exhibit 8.

[15] Docket no. 5, exhibit 10.

Civil No. 98-1992 (HL) 5

the company.[16] Instead of granting this request, UPS terminated him. It claims it did so because he had violated the company's policy against dishonesty.

Román claims that UPS dismissed him due to a disability-based discriminatory animus against him and because he had requested a reasonable accommodation. In its motion for summary judgment, UPS argues that it dismissed Román not due to an illegal motive but due to his having lied about his condition. Román has opposed the motion for summary judgment. For the reasons set forth below, the Court grants in part and denies in part the motion for summary judgment.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed. R. Civ. P. 56(e); *LeBlanc*, 6 F.3d at 841.

---

[16] Docket no. 11, exhibit I. In his opposition to the motion for summary judgment, Román has submitted a short one-page sworn statement in which he states that he has personal knowledge of the allegations in his opposition's legal memorandum and in his statement of contested facts. This is an awkward means of presenting an affidavit, and counsel for Plaintiff would do well to discontinue this practice.

AO 72A
(Rev 8/82)

Civil No. 98-1992 (HL)                              6

The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

## *McDonnel Douglas* framework

In the present case Román alleges that he was terminated because he has diabetes and because he requested an accommodation to another position in the company. He is, in effect, making two claims: one, that UPS' dismissal constituted discrimination against him due to a disability and two, that UPS dismissed him in retaliation for having requested a reasonable accommodation. Because these two claims are intertwined, the Court shall address them simultaneously. *See Champagne v. Servistar Corp.*, 138 F.3d 7, 12-13 (1st Cir. 1998) (Analyzing together claims of that termination was due to discrimination or retaliation). Both of these claims allege an improper motive by an employer. Where, as here, an employer's intent in an ADA case is at issue and there is no direct evidence of this intent, the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411

Civil No. 98-1992 (HL)                                  7

U.S. 792, 802-05, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973), should be invoked. *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999); *Cruz v. McAllister Bros., Inc.*, 52 F.Supp.2d 269, 278-79 (D.P.R. 1999).

Under the *McDonnel Douglas* framework, a plaintiff must first make out a *prima facie* case of discrimination (or retaliation). *Laurin v. Providence Hosp.*, 150 F.3d 52, 58 (1st Cir. 1998); *Dichner v. Liberty Travel*, 141 F.3d 24, 29-30 (1st Cir. 1998); *Champagne*, 138 F.3d at 12 & n.5; *Cruz*, 52 F.Supp.2d at 286. The employer then must articulate a legitimate non-discriminatory (or non-retaliatory) reason for the adverse employment action taken. *Laurin*, 150 F.3d at 58; *Champagne*, 138 F.3d at 12; *Cruz*, 52 F.Supp.2d at 286. The employer has a burden of production only; the burden of proving an improper motive always remains with the plaintiff. *Dichner*, 141 F.3d at 30. Once the employer meets this burden, the inference of a discriminatory (or retaliatory) motive created by the prima facie case dissolves. *Id.* The plaintiff then has the burden of establishing both that the employer's proffered reason is merely a pretext and that the real reason is a discriminatory (or retaliatory) animus. *Id.*; *Champagne*, 138 F.3d at 12-13.

### First step: the *prima facie* case for claim of discrimination

In the present case, Román must first make out a *prima facie* case against UPS. To make out a prima facie claim of discrimination, a plaintiff must show (1) that he was disabled, (2) that he was qualified, and (3) that there was a causal connection between his

Civil No. 98-1992 (HL)                              8

disability and the adverse employment action. *Laurin*, 150 F.3d at 58. In its motion for summary judgment, UPS does not contest that Román is disabled as defined under the ADA.[17] *See* docket no. 5, at 11. Thus, the first prong is satisfied.

UPS does contest the second prong of the test. It argues that because Román's condition prevents him from being licensed as a driver, he is not qualified. Román does not dispute the fact that he is no longer qualified to be a commercial driver. *See* docket no. 11, at 7. The fact that a plaintiff is unable to perform the essential functions of his original position does not, however, end the analysis. *Feliciano v. Rhode Island*, 160 F.3d 780, 786 (1st Cir. 1998). Román asserts that he should have been given another permanent position at UPS. A reasonable accommodation may include reassigning an employee to a vacant position. 42 U.S.C.A. § 12111(9)(B); *Feliciano*, 160 F.3d at 786; *see also Bratten v. SSI Services, Inc.*, 185 F.3d 625, 633-34 (6th Cir. 1999) ("[T]he ADA requires an employer to consider re-assignment to a vacant position if the disabled employee cannot be reasonably accommodated in his or her current job."). Román's claim, then, is not that UPS discriminated against him by terminating him as a driver, but that UPS discriminated against him by denying him another position in the company. In his opposition, he states

---

[17] The Supreme Court has recently held that the determination of whether an individual is disabled under the ADA should be made with reference to any corrective or mitigating measures the plaintiff may take for his condition. *See Murphy v. UPS*, __ U.S. __, 119 S.Ct. 2133, 2137, 144 L.Ed.2d 484 (1999); *Sutton v. United Air Lines*, __ U.S. __, 119 S.Ct. 2139, 2143, 2146, 144 L.Ed.2d 450 (1999). Thus, Román's status as being disabled is not entirely clear. However, because UPS has chosen to concede this point, the Court need not pursue this line of analysis.

that he was qualified for other positions and that in fact he had held other positions prior to his becoming a driver. He also states other positions were available at UPS.[18] Thus, he has satisfied the second prong of the *prima facie* test. And because the burden to making out a *prima facie* case is a modest one, *see Cardona Jimenez v. Bancomerico de Puerto Rico*, 174 F.3d 36, 41 (1st Cir. 1999), the Court will assume that Román also established the third prong of the test. Thus, an inference of discrimination is created.

### *Prima facie* case for claim of retaliation

Román's second claim is that his termination constituted an illegal retaliation for his having requested an accommodation. To make out a *prima facie* retaliation claim, a plaintiff must show (1) that he engaged in protected conduct, (2) that he was subject to an adverse employment action, and (3) that there was a causal connection between the adverse action and his protected conduct. *Champagne*, 138 F.3d at 12 n.5; *Cruz*, 52 F.Supp.2d at 286. The First Circuit has assumed that a request for a reasonable accommodation constitutes protected conduct. *See Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997); *see also Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (treating a request for reasonable accommodation as protected conduct); *Cruz*, 52 F.Supp.2d at 287 (same); *Barker v. Int'l Paper Co.*, 993 F.Supp. 10, 16 (D.Me. 1998) (same). The Court will make a similar assumption. It is undisputed that Román was

---

[18] Docket no. 11, exhibit I.

Civil No. 98-1992 (HL)                    10

dismissed. Thus he suffered an adverse employment action. The first two prongs of the *prima facie* case of retaliation have therefore been met.

The third prong requires a causal connection between the adverse action and the protected conduct. Close temporal proximity between protected conduct and an adverse employment action may give rise to a permissible inference of retaliation. *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998). In the present case, after Román's condition became known to UPS, he requested re-assignment to another position. Shortly thereafter, he was fired. This is sufficient to meet the third prong of the test. Thus, Román has also succeeded in establishing an inference of retaliation.

### Second step: Employer's burden of articulating a legitimate reason for the claims of both discrimination and retaliation

Once a plaintiff succeeds in making out a *prima facie* case, the employer then has the burden of producing a legitimate non-discriminatory reason for its actions. *Laurin*, 150 F.3d at 58. In the present case, UPS claims that it terminated Román because he deceived the company about his medical condition. In support of this claim, UPS has adduced Román's deposition testimony where he admits that he withheld this information from UPS and put down on his medical forms that he did not have diabetes.[19] The forms themselves

---

[19] Docket no. 5, exhibit 1, at 26-34.

Civil No. 98-1992 (HL) 11

indicate as much.[20] Company policy and the union's collective bargaining agreement made clear that dishonesty could result in dismissal.[21] This evidence establishes a legitimate reason for terminating Román. UPS easily meets its burden at this stage.

### Third step: plaintiff's burden of showing pretext and retaliation

After an employer meets its burden, the employee must show both that the proffered reason was a sham and that the real reason was discriminatory (or retaliatory). *Laurin*, 150 F.3d at 58; *Champagne*, 138 F.3d at 12-13. With regard to the claim of retaliation, the evidence indicates that Román's medical examination in 1995 showed that he had diabetes[22]; that supervisory personnel at UPS were responsible for reviewing these medical records[23]; that Román continued to work as a driver, even after being diagnosed in 1995 as diabetic; and that he was not terminated until 1997 when an examining physician explicitly stated that Román was not qualified to drive and when Román requested an accommodation to another position.[24] This evidence is sufficient to create a genuine issue

---

[20] Docket no. 5, exhibits 2, 3, & 4.

[21] Docket no. 5, exhibits 8 & 10.

[22] Docket no. 11, exhibit VI.

[23] Docket no. 11, exhibit II.

[24] Docket no. 11, exhibits I & VII.

AO 72A
(Rev.8/82)

Civil No. 98-1992 (HL)                                    12

of fact as to whether UPS knew in 1995 that Román had diabetes.[25] And the timing of Román's termination in 1997 shortly after he asked for a reasonable accommodation could create an inference that the termination was in retaliation for the request for an accommodation. There is sufficient evidence in the record to defeat summary judgment on this point.

### Third step: plaintiff's burden of showing pretext and discrimination

Román is also claiming that UPS' treatment of him was motivated by a discriminatory disability-based animus. The evidence discussed in the preceding paragraph is sufficient to create a genuine issue of fact as to whether UPS' proffered

---

[25] Román argues that UPS should have known in 1991 that he had diabetes. There is no evidence to support this claim. Román's 1991 medical examination said only that diabetes was suspected. Furthermore, Román subsequently obtained a medical certificate that he was able to work. *See* docket no. 11, exhibit V. Thus, the evidence does not show that UPS knew of his condition in 1991.

In his statement of contested facts, Román also alleges that in 1995 Wanda Molina, a UPS manager, knew that he had diabetes but that she told the doctor that she needed Román as a driver and would be responsible for him. Docket no. 11, statement of contested fact 33. An affidavit opposing a motion for summary judgment must be made on personal knowledge and must affirmatively show that the affiant is competent to testify as to the matters averred. Fed. R. Civ. P. 56(e); *Casas Office Machines v. Mita Copystar America*, 42 F.3d 668, 682 (1st Cir. 1994). In his sworn statement, Román conclusorily states that he has personal knowledge of all the matters in his statement of facts. Docket no. 11, exhibit I. Other than that, he offers no specific explanation as to how he knows that Molina made this alleged statement. He has laid no foundation for this statement and has made no showing that he does indeed have personal knowledge on this point. He has failed to show that he is competent to testify on this matter. Thus, his statement regarding Wanda Molina is inadmissible.

Civil No. 98-1992 (HL)                                   13

reason was a pretext. Román must do more, however, than merely create doubt as to the proffered reason. At this stage of the *McDonnel Douglas* test, the plaintiff must show *both* that the proffered reason was a pretext *and* that the real reason was a discriminatory-based animus. *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 465 (1st Cir. 1996). The record in this case is devoid of any evidence that UPS' actions were fueled by a discrimination against disabled persons in general or against Román in particular because of his diabetes. In his opposition, Román alleges that UPS had a discriminatory intent. The only evidence of this intent is his sworn statement which incorporates the allegations of his legal brief and statement of contested facts. As discussed above in footnote 25, an affidavit opposing a motion for summary judgment must be made on personal knowledge and must affirmatively show that the affiant is competent to testify as to the matters averred. Fed. R. Civ. P. 56(e). Generally, a court should not accept a nonmovant's statements regarding the movant's thoughts. *Simas v. First Citizens' Federal Credit Union*, 170 F.3d 37, 50-51 (1st Cir. 1999); *Vargas v. Puerto Rican-American Ins. Co.*, 52 F.Supp.2d 305, 311 (D.P.R. 1999). Nor should the court accept the nonmovant's conclusory allegations regarding discriminatory intent. *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 6 (1st Cir. 1998). An employee's affidavit regarding the motive or intent of his employer must indicate the basis of the affiant's information. *Connell v. Bank of Boston*, 924 F.2d 1169, 1177-78 (1st Cir. 1991); *see also Ruiz v. Posadas de San Juan Associates*, 124 F.3d 243, 249-50 (1st Cir. 1997) (Plaintiff failed to provide an evidentiary foundation upon which it could reasonably

Civil No. 98-1992 (HL) 14

be inferred that the employer's actions were discriminatory or age-based). In the present case, Román rests on conclusory allegations that UPS discriminated against him because of his disability and proffers no explanation or foundation to indicate that someone at UPS does indeed harbor such discriminatory intentions. Thus, such allegations are inadmissible.

Román does claim that there were other UPS employees who violated company policy regarding dishonesty but did not receive as a harsh a sanction as he did. He alleges that he was singled out for this treatment because he, unlike the other dishonest employees, was disabled. Other than a list of their names and the allegation that they are not disabled, he offers no other evidence regarding these other employees or their alleged dishonest acts.[26] If a claim of disparate treatment is based on evidence comparing the plaintiff to other employees the compared individuals must be "'similarly situated in all material respects.'" *Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 21 (1st Cir. 1999)

---

[26] In his sur-reply, Román does claim that some UPS employees who violated the dishonesty policy stole money, "stole time," failed to report accidents, and falsified documents. Docket no. 16, at 8-9. These allegations are defective. First, they are made in the brief. There is no affidavit or sworn statement attesting to these claims. The statement of counsel in a memorandum of law may not be used to defeat a motion for summary judgment. *Lopez v. Corporación Azucarera de Puerto Rico*, 938 F.2d 1510, 1515-16 n.11 (1st Cir. 1991). In his opposition to summary judgment, Román's sworn statement incorporated the allegations in his brief. His sur-reply does not have a similar document incorporating its allegtions. Additionally, Román does not specify which individual committed which acts. He also fails to explain what his basis is for this information. *See* Fed. R. Civ. P. 56(e). Because of all of these defects, these allegations may not be used to oppose the motion for summary judgment.

Civil No. 98-1992 (HL)                           15

(quoting *Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996));

*Cardona Jimenez*, 174 F.3d at 42. The comparison need not be an exact replica of the

plaintiff's situation. *Rodriguez-Cuervos*, 181 F.3d at 21; *Carey v. Mt. Desert Island

Hosp.*, 156 F.3d 31, 38 (1st Cir. 1998). A comparison with the plaintiff will be valid if "a

prudent person, looking objectively at the incidents, would think them roughly equivalent

and the protagonists similarly situated." *The Dartmouth Review v. Dartmouth College*,

889 F.2d 13, 19 (1st Cir. 1989). The plaintiff bears the burden of demonstrating that the

individuals whom he holds up as comparisons were subject to the same standards and

engaged in the same conduct without differentiating circumstances that might distinguish

their case from the plaintiff's. *Rodriguez-Cuervo*, 181 F.3d at 21.

In the present case, Román's evidence of the other dishonest employees does not

meet this standard. Román provides only the names of these employees and the allegation

that they are not disabled. He offers no details on the nature of the infractions of the other

employees, their positions, or the type of discipline to which they were ultimately

subjected. Without specific evidence, it is impossible to determine whether these other

individuals were similarly situated to Román in all material respects. Thus, he has failed to

meet his burden on this issue, and this comparative evidence may not serve to defeat

summary judgment. The only evidence in the record on these employees is a sworn

statement submitted by UPS from its general manager. In his statement he explains that

two of the seven employees cited by Román were never disciplined for dishonesty. The

AO 72A
(Rev 8/82)

Civil No. 98-1992 (HL)                                    16

other five were terminated by UPS, although four were subsequently reinstated either because an arbitrator ordered their reinstatement or because UPS and the employee subsequently agreed to a reinstatement.[27] There is no support for Román's argument that his termination, when compared to the disciplining of these other employees, constitutes evidence of a disability-based discrimination on UPS' part.[28]

Thus, there is no evidence in the record that UPS' real reason for terminating Román was a discriminatory-based animus. Absent such evidence, his ADA claim that he was terminated because of a disability-based discrimination must be dismissed. This dismissal shall be with prejudice. The Court also dismisses, without prejudice, Román's Law 44 claims on this same issue. *See Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990). There remains Román's claim that his termination constituted a retaliation for his having requested a reasonable accommodation. Accordingly, the Court grants in part and denies in part UPS' motion for summary judgment (docket no. 5). Partial judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 13, 2000.

HECTOR M. LAFFITTE
Chief U.S. District Judge

---

[27] Docket no. 15, exhibit 1.

[28] Counsel for Román agreed as much at the pretrial and settlement conference held in this case. At the conference, he agreed to the striking of these seven employees as witnesses at the trial.